IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RALPH DOUGLAS WEAVER,

Plaintiff,

v.                                                    Case No. 14-2235-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Ralph Douglas Weaver seeks review of a final decision by defendant,
the Commissioner of Social Security ("Commissioner"), denying his application for
Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the
Act"). Plaintiff alleges that the Commissioner erred in determining that he can perform
light work. Upon review, the court finds that the Commissioner's decision was
supported by substantial evidence contained in the record and is therefore affirmed.

**I. Background**

Plaintiff's relevant health issues date back to at least March 2011, when he visited
Dr. James Warner complaining of neck pain. Dr. Warner noted recent cervical spine x-
rays indicating mild abnormalities and prescribed pain medication. In a follow-up
appointment with Dr. Kimberly Moore, plaintiff was diagnosed with osteoarthritis of
the neck, aggravated by work. Cervical spine examination revealed full range of motion
with tenderness. On May 19, 2011, Dr. Warner examined plaintiff for right knee pain.
Dr. Warner noted normal muscle strength, full range of motion, and a normal gait. X-

rays revealed right knee joint effusion and Dr. Warner adjusted plaintiff's medication for his neck and knee pain. In June 2011, Dr. Warner again assessed plaintiff as having normal strength and reflexes, but with limited cervical spine range of motion.

On October 24, 2011, plaintiff was treated by Dirk Dunfee, a nonphysician provider associated with Dr. Sharon Lee. Dunfee noted limited cervical spine range of motion, right knee tenderness, limited right knee range of motion, an antalgic gait, and an absence of right knee effusion. Dunfee examined plaintiff again on November 8, 2011, noting normal gait, limited right knee range of motion, absence of right knee swelling, and limited cervical spine ranges of motion. Dunfee wrote plaintiff pain medication prescriptions on both occasions.

On November 18, 2011, Dr. Joseph B. Noland, an orthopedist, examined plaintiff for neck, right upper extremity, and knee pain. Dr. Noland noted symmetrical upper body extremity strength, stable right knee stress testing, and an antalgic gait. Cervical spine x-rays revealed moderate to severe degenerative changes. Dr. Noland later ordered a cervical spine MRI, which proved unremarkable.

On November 29, 2011, Scott Koeneman, Psy. D., examined plaintiff. Koneman noted normal gait and that plaintiff reported shopping and running errands.

Dr. Kyle Timmerman, a state agency physician, performed a residual functional capacity ("RFC") assessment of plaintiff on November 30, 2011. Dr. Timmerman determined that plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk and sit about six hours in an eight-hour day; push/pull within his lifting capacity; climb ramps or stairs, balance, and stoop frequently; kneel,

crouch, and crawl occasionally; and perform work allowing avoidance of concentrated exposure to cold, heat, vibration, and hazards such as machinery and heights, more than limited overhead reaching, or any ladder/rope/scaffold climbing; and that he had no visual, communicative, or other manipulative or environmental limitations.

Dr. Noland again examined plaintiff on December 1, 2011. Dr. Noland noted bilateral knee osteoarthritis, degenerative changes in the tricompartment of both knees, and an unremarkable cervical spine MRI. Dr. Noland indicated that plaintiff would undergo a course of Hyalgan knee injections. Dunfee treated plaintiff on December 6, 2011, and January 9, 2012, prescribing pain medication on both occasions.

Dr. Noland administered a series of five Hyalgan injections into plaintiff's knees from December 8, 2011, to January 5, 2011.

Dr. Talal Khan treated plaintiff from February 2012, to September 2012. During that period, Dr. Khan treated plaintiff with four cervical spine injections. Right knee x-rays from February 20, 2012, revealed "moderate or moderate to marked" osteoarthritis in the medial joint space of plaintiff's right knee, with moderate joint effusion.

On April 25, 2012, Dr. Noland examined plaintiff for follow-up of a right ankle fracture. Dr. Noland noted that plaintiff was out of his cam walker and was asymptomatic. On May 10, 2012, Dr. Noland treated plaintiff for his right knee pain. The knee was stable to stress testing, with x-rays showing fairly advanced medial joint space narrowing of both knees with tricompartmental degenerative changes. Plaintiff opted to persist with careful observation and pain medication treatment, which Dr. Noland noted was reasonable.

Dr. Khan performed a final cervical spine injection on September 17, 2012.

Dr. Stephen W. Munns, another orthopedist, examined plaintiff on December 7, 2012, for bilateral knee pain. X-rays revealed bilateral knee osteoarthritis. Physical examination revealed left knee range of motion from 0 to 110 degrees, and right knee range of motion from 0 to 105 degrees with pain in deep flexion. Dr. Munns noted that plaintiff's knees were both stable to varus/valgus stress, with 5/5 strength in the left lower extremities and 4/5 strength in the right lower extremities. Dr. Munns recorded that "[i]t was discussed with the patient that he may seek disability paperwork from his primary care doctor or Dr. Noland but regarding his knee pain he has had successful relief of his symptoms with Hyalgan injection in the past and has not tried corticosteroid injections." (Dkt. 9-1, at 485). Dr. Munns wrote Dr. Noland on December 7, 2012, stating that the Hyalgan injections had worked but that plaintiff's symptoms had started to recur, noting that plaintiff's knees "are certainly not severe enough yet to warrant arthroplasty."

On December 18, 2012, Dr. Noland completed an RFC questionnaire regarding plaintiff.

At his hearing on January 14, 2013, plaintiff testified before an administrative law judge ("ALJ") that he had neck and bilateral knee disorders, and that treatment with oral medication, injections, and ice were somewhat effective. Plaintiff also testified that he drove and went to the store, visited others about once a month, could lift a case of sodas from a desk and place it on the floor, and could pick his keys up off the floor by sitting down.

Vocational expert Denise W. Waddell testified that jobs existed in the regional and national economies that could be performed by a person of plaintiff's age, education, and a residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently.

In a decision dated January 31, 2013, the ALJ concluded that plaintiff had severe impairments of osteoarthritis in both knees and degenerative disk disease in the cervical spine. He found that plaintiff's subjective complaints were not credible to the extent alleged and that plaintiff had the RFC to perform light work. The ALJ only afforded Dr. Noland's opinion some weight because it was not well-supported. The ALJ determined that plaintiff could not perform his past work, but that there were a significant number of jobs in the national economy plaintiff could perform, given his limitations. He concluded that plaintiff was not disabled.

Plaintiff timely filed an appeal with this court pursuant to 42 U.S.C. § 405(g).

## II. Legal Standard

This court reviews the ALJ's decision under 42 U.S.C. § 405(g) to "determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citation omitted). "Substantial evidence requires more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (citation omitted). The court's role is not to "reweigh the evidence or substitute its judgment for

the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008). The possibility that two inconsistent conclusions may be drawn from the evidence does not preclude a finding that the Commissioner's decision was based on substantial evidence. *Zolantski*, 372 F.3d at 1200.

An individual is under a disability only if he or she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that []he is unable to perform h[is] past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering [his] age, education, and work experience." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has prescribed a five-step sequential analysis to determine whether disability existed between the time of claimed onset and the date the claimant was last insured under the Act. *Wilson*, 602 F.3d at 1139; 20 C.F.R. § 404.1520(a)(4). If the trier of fact finds at any point during the five steps that the claimant is disabled or not disabled, the analysis stops. *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). The first three steps require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe or combination of severe impairments; and (3) whether the severity of those impairments meets or equals a listed

impairment. *Wilson*, 602 F.3d at 1139 (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). If the impairments do not meet or equal a designated listing in step three, the Commissioner then assesses the claimant's RFC based on all medical and other evidence in the record. 20 C.F.R. § 404.1520(e). RFC is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The Commissioner then proceeds to step four, where the RFC assessment is used to determine whether the claimant can perform past relevant work. *Lax*, 489 F.3d at 1084; 20 C.F.R. § 404.1520(e). The claimant bears the burden in steps one through four of proving disability that prevents performance of his past relevant work. 42 U.S.C. § 423(d)(5)(A); *Lax*, 489 F.3d at 1084.

If a claimant meets the burdens of steps one through four, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given his age, education, and work experience." *Lax*, 489 F.3d at 1084 (brackets omitted).

### III. Analysis

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. Specifically, he argues that (1) Dr. Noland's opinion should have been given controlling weight, (2) Dr. Timmerman's opinion was given too much weight, and (3) the record as a whole does not support the RFC determination.

## A. Weighing a Treating Physician's Opinion

The ALJ determines RFC by evaluating a claimant's impairments that are "demonstrable by medically acceptable clinical and laboratory diagnostic techniques," then weighing evidence to determine the nature and severity of those impairments. 20 C.F.R. §§ 404.1527(a), 416.927(a). Such evidence may include medical opinions, other opinions, and a claimant's subjective complaints. *Id.*; *see also Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009). Statements from physicians are considered "medical opinions" for the RFC determination. 20 C.F.R. §§ 404.1527(a), 416.927(a).

Medical opinions are weighed by evaluating all relevant factors including: (1) the length, nature, and extent of any examining or treatment relationship; (2) whether the opinion source presents supporting evidence, such as medical signs and laboratory results; (3) how well the source explains the opinion; (4) whether the opinion is consistent with the record; (5) whether the source has specialty related to the claimant's impairments; and (6) all other relevant factors of which the ALJ is aware that may bear on what weight should be given to a medical opinion. 20 C.F.R. §§ 404.1527, 416.927; *see Knight ex rel P.K. Colvin*, 756 F.3d 1171, 1176-77 (10th Cir. 2014). "[T]he ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Knight*, 756 F.3d at 1177 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

A treating physician's statement is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting SSR 96-2p, 1996 WL

374188, at *2). If the treating physician's statement is not well-supported or is otherwise inconsistent with substantial evidence on record, then it is not entitled to controlling weight and is weighed as any other medical opinion. *Id.*

Here, the ALJ gave Dr. Noland's opinions only "some weight" because "they are not supported by his own treatment notes or any of the other medical evidence in the record," and because Dr. Noland opined pain symptoms exceeding plaintiff's testimony. (Dkt. 9-1, at 28).

Dr. Noland opined that plaintiff's osteoarthritis limits him to: walking one block, sitting for a maximum of 30-45 minutes continuously, standing for a maximum of 10-15 minutes continuously, and standing or walking a maximum of 2 hours per 8-hour work day. (Dkt. 9-1, at 512-13). He further opined that plaintiff: must walk for 5-10 minutes every 15-30 minutes; can lift less than 10 pounds frequently, 10 pounds occasionally, 20 pounds rarely, and can never lift 50 pounds; can only occasionally look up or hold his head in a static position; can occasionally twist, can rarely stoop, climb ladders or stairs, and can never crouch or squat; and has no limitations with reaching, handling, or fingering. (Dkt. 9-1, at 513-14). Finally, Dr. Noland opined that plaintiff's claims of pain were credible, that the symptoms and limitations have persisted since June 2011, and that his pain would further limit the ability to perform the activities described above. (Dkt. 9-1, at 514-15).

Dr. Noland's notes describe: "fairly advanced joint space narrowing" shown by x-ray (Dkt. 9-1, at 466); shoulder and arm pain with "some evidence of rotator cuff impingement" and "evidence of cervical radiculopathy" (Dkt. 9-1, at 480), with

appropriate physical exam procedures to support the findings; and degenerative disk disease. (Dkt. 9-1, at 480). A radiology report ordered by Dr. Noland notes "moderate to severe degenerative changes of the medial right knee and moderate medial joint space narrowing on the left." (Dkt. 9-1, at 488). The clinical and laboratory techniques associated with Dr. Noland's treatment support his findings of osteoarthritis and cervical radiculopathy.

However, Dr. Noland's opinion of the degree of plaintiff's limitations is inconsistent with the objective evidence in the record. For example: an MRI revealed an "unremarkable" cervical spine (Dkt. 9-1, at 478); Dr. Munns concluded that plaintiff's knees did not warrant arthroplasty (Dkt. 9-1, at 482); plaintiff opted to persist with pain medication treatment rather than surgical evaluation (Dkt. 9-1, at 466); and plaintiff responded well to knee injections (Dkt. 9-1, at 482). Dr. Noland suggests very limited mobility because of plaintiff's knees, but Dr. Munns reported that Hyalgan injections were effective in alleviating knee symptoms for nearly six months. (Dkt. 9-1, at 52-53, 482).

Dr. Noland's opinion is also inconsistent with plaintiff's testimony. Plaintiff stated that his knee pain is only a five or six on a scale of one to ten, which does not suggest that the pain would be severe enough to further limit plaintiff's ability to less than light work. (Dkt. 9-1, at 45, 515). Plaintiff stated on August 31, 2011, that he could lift 25 pounds, whereas Dr. Noland opined that plaintiff could only rarely lift up to 20 pounds. (Dkt. 9-1, at 189). Further, plaintiff stated that he cared for his own personal

needs, performed household chores, visited others occasionally, prepared meals, and went to the store. (Dkt. 9-1, at 185-88).

Dr. Noland's opinion is not supported by his own records. Dr. Noland's notes do not indicate the degree of plaintiff's pain, nor do they indicate limitations on lifting, sitting, walking, or standing. He also found plaintiff's choice to continue conservative treatment "reasonable." (Dkt. 9-1, at 466). Moreover, Dr. Noland opined that plaintiff has experienced the symptoms and limitations described above since June 2011, but he did not begin treating plaintiff until November 18, 2011. (Dkt. 9-1, at 480). Dr. Noland therefore has no records to support the opined onset date, and such opinion is speculation.

Dr. Noland's opinion that plaintiff cannot perform light work is not well supported by the record and is therefore not entitled to controlling weight. The ALJ's decision to grant Dr. Noland's opinion some weight, but not controlling weight is supported by substantial evidence in the record.

### B. Dr. Timmerman's Opinion

The ALJ granted Dr. Timmerman's evaluation greater weight than Dr. Noland's because it was "supported by the medical evidence in the record and [plaintiff's] own testimony." (Dkt. 9-1, at 28). Dr. Timmerman's RFC opinion incorporates existing medical imaging of plaintiff's knees and spine, as well as clinical evaluations of plaintiff's range of motion and daily activities. (Dkt. 9-1, at 87). The opinion is well-explained in nearly one half of a page of narrative. (Dkt. 9-1, at 87). The opinion is consistent with the medical imaging in the record, as well as medical opinions that

plaintiff's knees are not degraded to a degree warranting arthroplasty. It is also consistent with plaintiff's testimony that he goes to the store to buy groceries and climbs stairs. Accordingly, the ALJ's decision to grant it greater than "some" weight is supported by substantial evidence in the record.

### C. The Record as a Whole Supports the RFC Determination

Plaintiff argues that the record does not support an RFC of "light work" because he "is clearly not able" to lift and carry 10 pounds frequently and 20 pounds occasionally, stand or walk a total of 6 hours per 8-hour workday, or frequently stoop. (Dkt. 12, at 16). Plaintiff cites his testimony and Dr. Noland's opinion in opposition to the ALJ's finding. However, nowhere does plaintiff's testimony claim that he cannot do the "light work" requirements. As discussed above, Dr. Noland's opinion was considered and given some weight. Plaintiff further references the medical imaging in the record that shows progressing osteoarthritis in his knees. However, the medical imaging supports only a finding of the "severe impairment" of osteoarthritis in both knees noted by the ALJ. (Dkt. 9-1, at 14). The imaging does not indicate what level of pain or pain limitations plaintiff experiences.

The ALJ extensively detailed the substantial evidence in the record that supports his RFC determination. That twelve-page narrative included: plaintiff's testimony about his daily activities; detailed medical records from July 21, 2009, to December 7, 2012, indicating that plaintiff had good muscle strength, responded well to knee injections, and that he did not need surgery; and the State agency medical expert review of the record to help determine RFC. The above medical records include those of treating

physicians, such as Dr. Munns. (Dkt. 9-1, at 16-28). It is not the court's job to re-weigh the evidence. The ALJ's RFC determination is supported by substantial evidence.

IT IS ACCORDINGLY ORDERED this 6th day of February, 2015, that the Commissioner's decision is AFFIRMED.


                                          s\ J. Thomas Marten
                                          J. THOMAS MARTEN, JUDGE